**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **METAL MANAGEMENT, INC. and METAL** | : | |
| **MANAGEMENT CONNECTICUT, INC.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:06-cv-2004 (VLB)** |
| **MICHAEL SCHIAVONE,** | : | |
| **Defendant.** | : | **September 13, 2007** |

## MEMORANDUM OF DECISION AND ORDER DENYING THE DEFENDANT'S MOTION TO DISMISS THE PLAINTIFFS' APPLICATION FOR ORDER PENDENTE LITE AND PREJUDGMENT REMEDY [Doc. #45] AND DENYING THE PLAINTIFFS' MOTION FOR IMMEDIATE DISCLOSURE OF ASSETS [Doc. #30]

### I.  Procedural History

The plaintiffs, Metal Management, Inc. ("MMI") and Metal Management Connecticut, Inc. ("MMCT"), initiated this action against the defendant, Michael Schiavone ("Schiavone"), by applying for a prejudgment remedy and order pendente lite to secure their rights under a pending arbitration between the parties.  Schiavone moves the court to dismiss the plaintiffs' application for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  For the reasons hereinafter set forth, Schiavone's motion to dismiss is DENIED.  While the plaintiffs' application survives Schiavone's motion to dismiss, their motion for immediate disclosure of assets is also DENIED.

### II.  Factual Background

On July 1, 1998, MMI, MMCT[1], Schiavone and Joseph A. Schiavone Corp. ("JASC")[2] executed an Asset Purchase Agreement ("APA") under which MMCT purchased from JASC a scrap metal recycling facility and associated real property.  [Doc. #31, Ex. A]  MMCT is a wholly owned subsidiary of MMI, and each company signed the APA separately and in its own capacity.  Both MMI and MMCT are defined as "Purchaser Indemnified Parties" in § 1.1 of the APA.

In Article IV of the APA, "each of Schiavone and [JASC], jointly and severally, represents and warrants to [MMCT] and [MMI]" that certain conditions existed regarding prior methods of operating the recycling plant and the conditions of the plant and real property at the time of purchase.  Within the same article, in § 4.21 Schiavone and JASC make specific representations and warranties to MMCT and MMI regarding the environmental standards utilized by the recycling plant and JASC's past compliance with environmental laws.

In Article XIII of the APA Schiavone and JASC agree to indemnify MMCT and MMI.  Specifically, § 13.2 reads:

> Schiavone and [JASC] agree, jointly and severally, to indemnify each of the Purchaser Indemnified Parties against, and agree, jointly and severally, to hold each of them harmless from, any and all Losses incurred or suffered by them or relating to or arising out of or in

---

[1]In 1998, MMCT conducted business as 1MS Acquisition, Inc.  For purposes of this discussion, references to MMCT include those instances where the company was named 1MS Acquisitions, Inc.

[2]In 1998, JASC conducted business as Michael Schiavone & Sons, Inc.  For purposes of this discussion, references to JASC include those instances where the company was called Michael Schiavone & Sons, Inc.

> connection with ... (a) any breach of or any inaccuracy in
> any representation or warranty made by [JASC] in this
> Agreement.

The APA also includes an arbitration clause, § 14.16, under which any party can demand that any dispute involving non-compliance with any terms of the agreement be submitted to binding arbitration.

The plaintiffs claim that "since closing on the APA, [they] discovered various deleterious preexisting environmental conditions at the Property and learned that JASC had operated the facility in contravention of certain environmental laws and the representations and warranties made by Schiavone and JASC [to them] in the APA." [Doc. #29, para. 10]

On May 8, 2003, the Connecticut Department of Environmental Protection ("CDEP") instituted an enforcement action in Connecticut Superior Court, Judicial District of Hartford, against MMCT, Schiavone and JASC, among others but not including MMI, alleging that the property was environmentally contaminated in violation of Connecticut environmental laws. See Rocque, Comm'r of Env. Prot. v. Schiavone, et al., Docket No. CV-03-0825384. The CDEP enforcement action has caused the plaintiffs to incur the cost of defending the enforcement action and potentially exposes MMCT as the property's current owner to liability for JASC's conduct prior to transfer of ownership.

On October 13, 2006, MMI and MMCT jointly filed a demand for arbitration in accordance with the APA alleging claims of breach of contract, fraudulent inducement and fraudulent concealment against Schiavone and JASC.

3

On December 15, 2006, MMI instituted this action by filing an application for a prejudgment remedy and order pendente lite against Michael Schiavone and JASC pursuant to Connecticut General Statutes § 52-422 ("§ 422").  [Doc. #6]  On February 23, 2007, MMI amended its application to include MMCT as an additional plaintiff, and remove JASC as a defendant.[3]  [Docs. #29-31]  The amended application requests 1) a prejudgment remedy in the amount of $9,760,000 against Schiavone, 2) an order that Schiavone immediately disclose his assets, and 3) that his out of state assets be brought within Connecticut and filed with the court clerk for preservation pending the final outcome of the arbitration.  The plaintiffs moved for an immediate disclosure of assets because "the time and expense of holding a probable cause hearing and obtaining a prejudgment remedy may be wasted if Schiavone has insufficient or inaccessible assets." [Doc. #30]

On May 25, 2007, Schiavone filed the subject motion to dismiss.  [Doc. #45] Schiavone first moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction 1) all claims asserted by MMI on the grounds that MMI lacks standing, and 2) any part of the plaintiffs' application for prejudgment relief that relies on Connecticut General Statutes §§ 52-278a et seq. ("§ 278"), because that statute applies only when the underlying dispute is pending as a civil action, not an arbitration.

Additionally, Schiavone moves pursuant to Federal Rule of Civil Procedure

---

[3]By early 2007 JASC had declared bankruptcy and been dissolved.

12(b)(6) to dismiss for failure to state a claim upon which relief can be granted: 1) the application in its entirety because the relief sought by the plaintiffs is not "necessary" as defined by § 422; 2) the motion for immediate disclosure of assets under § 422, claiming disclosure would violate Schiavone's right to privacy as protected by the Fourteenth Amendment; and 3) the request for an order bringing Schiavone's assets into Connecticut, claiming such relief is injunctive in nature and that the plaintiffs have not shown irreparable injury.

### III.  12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  A motion to dismiss for lack of subject matter jurisdiction is the appropriate means to challenge standing as standing concerns whether an application for relief presents a case or controversy upon which a federal court can exercise its Article III powers.  <u>Auerbach v. Board of Educ. of the Harborfields</u>, 136 F.3d 104, 108 (2d Cir. 1998).

> To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167,

180-181 (2000).

In considering a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). To successfully defend against a Rule 12(b)(1) motion to dismiss, the plaintiff must establish subject matter jurisdiction by a preponderance of the evidence. Makarova, 201 F.3d at 113.

## A.  MMI's Standing

Schiavone claims MMI lacks standing to assert its claims because MMCT is the sole owner of the recycling plant and real property, and MMI is not a party to the CDEP enforcement action. Consequently, MMI has not suffered any injury in fact because it is not directly liable for any environmental remediation of the property, and thus has no basis to claim indemnity from Schiavone under the APA.[4]

Schiavone does not contest that MMI is a signatory to the APA, that the APA specifies MMI is a purchaser indemnified party, that purchaser indemnified

---

[4]Schiavone also claims MMI lacks standing under Connecticut state law. See Mid-Hudson Catskill rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005) (plaintiffs in federal court through diversity jurisdiction must have standing under federal and state law). The Connecticut Supreme Court has ruled standing requires "a colorable claim of a direct injury to the plaintiff ... and [the plaintiff] must be a proper party to request adjudication of the issues." Ganim v. Smith & Wesson Corp., 258 Conn. 313, 346-47 (Conn. 2001). This standard is similar to the Article III requirements of injury in fact, causation and redress. The court's discussion of MMI's standing herein is applicable to both the federal and state standard.

6

parties are entitled to indemnity from Schiavone for specified breaches of the APA, nor that MMI asserts claims on its own behalf in the pending arbitration.

Through this action, MMI and MMCT seek to secure their rights under the pending arbitration. § 422 reads:

> At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court . . . in a controversy concerning land, for the judicial district in which the land is situated . . . upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.

Conn. Gen. Stat. § 52-422

The fact that an applicant for relief under § 422 is a party to a pending arbitration is the essential element conferring jurisdiction on the courts under the statute. See Goodson v. State, 232 Conn. 175, 180 (Conn. 1995) ("by its express terms, [§ 422] allows the trial court to issue an order . . . 'upon application of any party to the arbitration'").

MMI stated in its pleadings that it is a party to the APA and entitled to indemnification thereunder, that it is a party to a pending arbitration, asserting claims of breach of contract, fraudulent inducement and fraudulent concealment by Schiavone, and is seeking damages as a consequence thereof. [Docs. #29-31] All of MMI's arbitration claims stem from a contract dispute in which MMI and Schiavone are signatories to the underlying contract. The APA also lists MMI as

a party entitled to indemnification in the event Schiavone or JASC does not fulfill their contractual obligations.

The rights protected by § 422 are those available to parties to an arbitral proceeding, namely fair adjudication of a dispute, redress of injuries found to have been suffered and satisfaction of awards rendered in the party's favor.  The court's role in considering an application filed under § 422 is not to determine the amount or apportionment of damages at issue in the underlying arbitration.  See Morris v. Cee Dee, LLC, 90 Conn. App. 403, 411-412 (Conn. App. Ct. 2005) ("[p]rejudgment remedy proceedings are not involved with the adjudication of the merits of the action . . . . [t]hey are only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action").  The ultimate issues are more appropriately settled in the pending arbitration itself.

Accordingly, this court need not determine the actual damages suffered by MMI separate and apart from those suffered by the co-plaintiff MMCT.  The court must only find whether MMI's pleaded facts, drawing all reasonable inferences in MMI's favor, show by a preponderance of the evidence that MMI may have suffered an injury in fact.

MMI is a party to the APA, is entitled to indemnification under the APA, is the parent of MMCT, and is a party to a pending arbitration seeking to resolve disputes arising under the APA as a result of an environmental enforcement action initiated by the CDEP, claiming that the defendants violated Connecticut

environmental laws triggering the arbitration's outcome. MMI has standing to apply for preliminary relief under § 422 and protect its rights as a party to the pending arbitration. Therefore, Schiavone's motion to dismiss MMI's claims for lack of standing is DENIED.

## B. § 278

Schiavone moves to dismiss any part of the plaintiffs' application that relies on § 278 because the court does not have subject matter jurisdiction under that statute in the instant case.

The plaintiffs did not file their application for preliminary relief under § 278. The plaintiffs clearly state in the first paragraph of their application for a prejudgment remedy and order pendente lite that § 422 is the operative statute. [Docs. #30-31] § 278 is merely cited for reference, as the various parts of that statute define Connecticut's standards and procedures for obtaining a prejudgment remedy. See Insurity, Inc. v. Mut. Group, LTD., 260 F. Supp. 2d 486, 490 (D. Conn. 2003) (§ 278 "may be extremely helpful to a court reasoning by analogy to [§ 422], much the same way a federal court develops federal common law by looking to state law sources that are thoughtful and persuasive, though not binding"); see also Fed. R. Civ. P. 64 ("remedies . . . for the purpose of securing satisfaction of the judgment . . . are available under the circumstances and in the manner provided by the law of the state in which the district court is held").

Accordingly, Schiavone's motion to dismiss for lack of subject matter

jurisdiction under § 278 is DENIED.

## IV.  12(b)(6)

"In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff."  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation omitted).  The pleading shall not be dismissed merely because recovery seems remote or unlikely.  Bernheim, 79 F.3d at 321.

In deciding a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

### A.  Necessity of a Prejudgment Remedy

Rule 64 of the Federal Rules of Civil Procedure reads:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner

10

> provided by the law of the state in which the district
> court is held.

Fed. R. Civ. P. 64. "Rule 64 thus authorizes a federal court to borrow relevant state law on provisional remedies. And although the federal civil rules govern the conduct of the action in federal court, state law determines when and how a provisional remedy is obtained." Bahrain Telcoms. Co. v. DiscoveryTel, Inc., 476 F. Supp. 2d 176, 183 (D. Conn. 2007) (internal quotation omitted).

Under § 422, the court may "at any time before an award is rendered pursuant to an arbitration . . . upon application of any party to the arbitration . . . make forthwith such order or decree, issue such process and direct such proceedings as *may* be necessary to protect the rights of the parties." Conn. Gen. Stat. § 52-422 (emphasis added). The statute is "designed to vest the court with broad power to provide the parties in arbitration some protection." Insurity, 260 F. Supp. 2d at 489.

A threshold determination for the court before considering an application for prejudgment relief ancillary to a pending arbitration is whether the prejudgment relief requested "may be necessary" to protect the rights of a party to the pending arbitration.

Schiavone claims the Connecticut Supreme Court's definition of necessary under § 422 in New England Pipe Corporation v. Northeast Corridor Foundation, 271 Conn. 329, 336-37 (Conn. 2004), precludes the court from considering the plaintiffs' application for prejudgment relief given the facts of this case.

11

In **New England Pipe**, the Connecticut Supreme Court defined necessary under § 422 as: "something that cannot be done without: that must be done or had: absolutely required: essential, indispensable." **Id.** In other words, "[u]nless a party to an arbitration proceeding affirmatively can establish that its rights will be *lost irretrievably* in the absence of judicial intervention" the court should not intervene. **Id.** at 337 (emphasis added).

The question before the court in **New England Pipe** was whether a party to a pending arbitration was entitled pursuant to § 422 to interlocutory appeal and an order permanently enjoining the arbitral panel from hearing expert testimony offered by the opposing party. The court held "the parties' disagreement regarding the disclosure of experts was nothing more than a run-of-the-mill discovery dispute, the resolution of which had been reserved, under the parties' agreement, to the sound discretion of the panel" and judicial intervention was not "absolutely required to protect the [party]'s rights during the pendency of the arbitration proceeding."[5] **Id.**

In the instant case, the plaintiffs seek a prior attachment or other prejudgment remedy preventing the disposition of Schiavone's assets prior to the arbitration's final outcome. A prejudgment remedy protects a vastly different set

---

[5]**Schiavone further claims this court's ruling in **Bahrain** applied **New England Pipe**'s definition of necessary under § 422 directly to a prejudgment remedy attachment. That interpretation misconstrues **Bahrain**. In fact, the court in **Bahrain** made no finding as to the necessity of a prejudgment remedy, instead postponing that decision until after a hearing. **Bahrain**, 476 F. Supp. 2d at 186. **Bahrain** merely reiterated **New England Pipe**'s definition of necessary, without a final application. **Id.**

of rights with a lesser level of interference than interlocutory review of a run-of-the-mill discovery dispute. "A prejudgment remedy does not interfere with the arbitral process but merely ensures that there will be assets available to satisfy any judgment the arbitrators themselves may render." <u>Bahrain</u>, 476 F. Supp. 2d at 182. Such a protection of the plaintiffs' rights is necessary as defined by <u>New England Pipe</u> in that their ability to collect on a potential award may very well be "lost irretrievably" and would certainly be jeopardized absent a prejudgment remedy.

A strong argument can be made that a prejudgment remedy may indeed be necessary. In the ordinary course of business, as an ongoing concern companies routinely incur actual and contingent liabilities that can impair or otherwise effect its creditors ability to recover a debt owed. A prejudgment remedy simply enables a creditor to get in line at the time its contingent claim arises. If its claim never ripens the lien is of no practical effect; however, if the claim ripens, the priority of that creditor's right of recovery is preserved.

A prejudgment remedy is tantamount to a security interest under Article 9 of the Uniform Commercial Code, codified in Connecticut as Title 42a of the Connecticut General Statutes. A secured transaction is one that creates for a creditor an interest in the property of a debtor that secures performance of some obligation. <u>See</u> U.C.C. § 9-102. The secured creditor's rights in the debtor's property are terminated upon satisfaction of the debtor's obligations. Should the debtor default on performance of the obligations, the creditor is entitled to

enforce its claim to the property with judicial assistance. <u>See</u> U.C.C. § 9-601.

Under the code, "security interests . . . rank according to priority in time of filing or perfection . . . . [and] [t]he first security interest . . . to attach or become effective has priority if conflicting security interests . . . are unperfected." U.C.C. § 9-322(a)(1), (a)(3). Official Comment 3 to § 9-322 explains the provisions "may be regarded as adaptations of the idea, deeply rooted at common law, of a race of diligence among creditors." U.C.C. § 9-322, Official Comment 3.

The code essentially provides for payment of creditors in the order in which they register their claims. If a creditor waits to register its claim, any other creditor which registers its claim in the interim period would take priority when the time comes for the debtor to settle all claims. Consequently, if the debtor lacks sufficient funds to settle all claims, the creditors at the end of the line would be left with empty pockets and their claims lost irretrievably.

A prejudgment remedy attachment functions in a similar manner to a secured transaction. An attachment secures a plaintiff's interest in the property of the defendant and allows the plaintiff to reserve a level of priority in satisfaction of creditors' claims against the defendant's property. The attachment expires upon resolution of the parties' dispute in favor of the defendant. Should a plaintiff's claims prove meritorious and judgment enter its favor, the plaintiff becomes a creditor which can enforce the judgment by filing and possibly foreclosing a judgment lien on the defendant's property. <u>See</u> Conn. Gen. Stat. § 52-350a (defining Connecticut's postjudgment procedures).

Should MMI and MMCT be forced to wait for a final arbitral award and possible subsequent enforcement action before asserting their claim, any creditors getting in the collection line before the plaintiffs would have priority over their claims. In that event, the plaintiffs' right to collect could likewise be lost irretrievably.

The Connecticut Supreme Court has spoken as to the necessity of a prejudgment remedy, although not in the context of § 422. In <u>Margolin v. Kleban and Samor, P.C.</u>, 275 Conn. 765 (Conn. 2005), the court upheld a legal malpractice damages award against a law firm that failed to apply for a prejudgment remedy on behalf of its client to secure the outcome of the underlying dispute. The client was subsequently unable to collect on its judgment because diligent creditors had taken priority in claiming the defendant's assets, and the defendant lacked sufficient funds to satisfy all claims. <u>Id.</u> at 658.

Schiavone claims that MMI and MMCT are not entitled to a prejudgment remedy because they have failed to show that Schiavone is fraudulently concealing his assets. MMI and MMCT are not proceeding under the Uniform Fraudulent Transfer Act. <u>See</u> Conn. Gen. Stat. § 52-552a <u>et seq.</u> (providing relief to creditors when debtors fraudulently transfer assets to avoid or hinder satisfaction of a debt). Schiavone cites no legal authority to support the proposition that the court must find such nefarious conduct before granting an application for a prejudgment remedy of attachment. Indeed, the standard does not require such a finding. In fact, such are not the factors prescribed by § 422 or

15

§ 278, nor were these factors considered by the court in <u>Margolin</u>.  On the

contrary, in <u>Margolin</u> the defendant appeared to have had sufficient assets to

satisfy the judgment for which a prejudgment remedy was not sought at the time

that application could have been made.  <u>Margolin</u>, 275 Conn. at 658.

In ordering a prejudgment remedy of attachment, the court must only find

that "there is probable cause that a judgment in the amount of the prejudgment

remedy sought, or in an amount greater . . . will be rendered in the matter in favor

of the plaintiff."  Conn. Gen. Stat. § 52-278d(a)(1).  "The legal idea of probable

cause is a bona fide belief in the existence of the facts essential under the law for

the action and such as would warrant a man of ordinary caution, prudence and

judgment, under the circumstances, in entertaining it."  <u>Three S. Dev. Co. v.

Santore</u>, 193 Conn. 174, 175 (Conn. 1984) (quoting <u>Walt v. Toomey</u>, 52 Conn. 35,

36 (Conn. 1884)).

MMI and MMCT's application for an order that Schiavone immediately

disclose his assets and that such assets be brought into Connecticut for

preservation are ancillary to the prejudgment remedy and also may be necessary

to protect the plaintiffs' rights.[6]  <u>See</u> <u>Hamma v. Gradco Systems, Inc.</u>, 1992 U.S.

---

[6]**Schiavone relies on <u>Bahrain</u> to separately challenge the necessity of the
plaintiffs' application for immediate disclosure of assets.  Specifically, Schiavone
interprets <u>Bahrain</u> to mean orders to disclose assets prior to a prejudgment
remedy probable cause hearing are <u>per se</u> not necessary.  However, in
dismissing the plaintiff's application for immediate disclosure of assets without
prejudice the court in <u>Bahrain</u> stated "the Court does not discount the possibility
that events could occur . . . that would add sufficient urgency" rendering an order
for immediate disclosure of assets necessary.  <u>Bahrain</u>, 476 F. Supp. 2d at 188.**

Dist. LEXIS 17601, at *10, 1992 WL 336740, at *3 (D. Conn. Nov. 4, 1992) ("federal courts routinely issue ancillary orders in conjunction with prejudgment remedies without finding a likelihood of success on the merits"); see also Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d 152 (2d Cir. 1977) (district court properly acted in equity in conjunction with prejudgment remedy as authorized by Connecticut law). As such, § 422 confers authority on the district court to consider the plaintiffs' application for prejudgment relief in its entirety.

Schiavone's motion to dismiss for failure to state a claim because the prejudgment relief requested is not necessary under § 422 is therefore DENIED.

### B. Immediate Asset Disclosure

In Connecticut v. Doehr, 501 U.S. 1 (1991), the Supreme Court invalidated Connecticut's prejudgment remedy statute as violating due process because it allowed for ex parte prejudgment remedies without a probable cause hearing. The Supreme Court found "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." Id. at 12. Explaining that "the property interests that attachment affects are significant . . . . [because] attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause," the Supreme Court held due process requires a defendant have the opportunity to be heard before assets can be

17

encumbered by an attachment.  Id. at 11.

The plaintiffs do not seek to attach Schiavone's assets prior to a probable cause hearing.  Instead, the plaintiffs move for a disclosure of assets prior to a probable cause determination without causing any of the "cloud[ing]," "impair[ing]," or "taint[ing]" effects an attachment can have on property.[7]

"Not only may the court issue an order for disclosure of assets under [§ 422], it may do so *prior* to, and *independent of*, a probable cause determination." Insurity, 260 F. Supp. 2d at 491 (emphasis in original); see also Lyons Hollis Assocs. v. New Tech Partners, Inc., 278 F. Supp. 2d 236, 247 (D. Conn. 2003) (citing Insurity with approval).[8]

Schiavone moves to dismiss the plaintiffs' application for immediate disclosure of assets on the grounds that issuance of such an order prior to a hearing on the merits would violate Schiavone's right to keep personal financial

───────────────────

[7] While Schiavone does not contest the constitutionality of a pre-hearing order for disclosure of assets under the Doehr line of cases, it is worth noting that absent encumbrances of property such an order does not run afoul of procedural due process jurisprudence.

[8] Schiavone refers to Connecticut General Statutes § 52-278n(c) as to the appropriateness of an order to disclose assets prior to a probable cause hearing. [Doc. #46]  That statute provides that "the court may order disclosure at any time prior to final judgment after it has determined that the party filing the motion for disclosure has . . . probable cause sufficient for the granting of a prejudgment remedy."  Conn. Gen. Stat. § 52-278n(c).  The plaintiffs' are proceeding under § 422 and not § 278.  Schiavone does not contest that § 422 authorizes the court to order a disclosure of assets prior to a probable cause hearing so long as it is necessary under that statute.  See supra III, A.  Schiavone only argues that such an application of the statute would violate his constitutionally protected right to privacy.

18

information private as protected by the Fourteenth Amendment.

Courts apply intermediate scrutiny when analyzing a case invoking privacy rights protected by the Fourteenth Amendment.  See Barry v. City of New York, 712 F.2d 1554, 1558-59 (2d Cir. 1983).  "Under intermediate scrutiny, if the [f]inancial [d]isclosure [r]ule is designed to further a substantial governmental interest and does not land very wide of any reasonable mark in making its classifications, it must be upheld."  Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 324 (2d Cir. 1999) (internal quotation omitted).

Undoubtedly there is a substantial governmental interest in promoting the "just, speedy, and inexpensive determination of every action" before the federal courts.  Fed. R. Civ. P. 1.  Both the federal courts and Connecticut Supreme Court have articulated a strong policy favoring arbitration as an alternative means of dispute resolution.  See Bank Julius Bear & Co. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir. 2005); AFSCME, Council 4, Local 704 v. Dep't of Pub. Health, 272 Conn. 617, 626 (Conn. 2005).  As such, there exists a substantial governmental interest in the court exercising its statutory authority in support of party agreed upon arbitration.

The question then becomes whether a court order to disclose assets prior to a prejudgment remedy probable cause hearing lands very wide of the government's substantial interest in a just, speedy and inexpensive adjudication of disputes through arbitration.

It is difficult to imagine how an order to disclose the very assets that will

satisfy a potential arbitral award would not be specifically targeting the governmental interest in supporting the arbitration itself.

The Second Circuit in <u>Barry</u> "recognize[d] that public disclosure of financial information may be personally embarrassing and highly intrusive." <u>Barry</u>, 712 F.2d at 1561.  However, the court in <u>Barry</u> upheld the financial disclosure requirement because "the statute's privacy mechanism adequately protects plaintiffs' constitutional privacy interests."  <u>Id.</u>  Under that statute a person complying with the financial disclosure rule could file a claim of privacy in writing with respect to the information requested.  <u>Id.</u>

An order for disclosure of assets absent an adjoining prejudgment remedy authorizing attachment of those assets - the practical result of an order to disclose assets prior to a prejudgment remedy probable cause hearing - is akin to discovery in an ordinary civil case.

Federal Rule of Civil Procedure 26 allows the parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  This standard is liberally construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  <u>Oppenheimer Fund v. Sanders</u>, 437 U.S. 340, 351 (U.S. 1978).

A party's financial information can be relevant for discovery purposes if it implicates specific elements of a claim or defense asserted in the dispute.  <u>See Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine</u>, 951 F.2d 1357,

1367-68 (2d Cir. 1991) (plaintiff entitled to discovery of financial information to establish "alter ego" theory of liability).[9]

Federal Rule 26(c) contemplates disclosure of potentially private or embarrassing information. Under that rule, the court has authority to address privacy concerns upon application of a party through various methods of specifying the terms and conditions by which private information can be accessed. Fed. R. Civ. P. 26(c). Similar to the privacy mechanism contemplated by the court in Barry, Schiavone can petition the court for relief in the form of a protective order or confidentiality order to address his privacy concerns if the court orders the immediate disclosure of his assets.

Schiavone's motion to dismiss the plaintiffs' application for immediate disclosure of assets if therefore DENIED. The court possesses the authority to issue an order to disclose assets prior to a probable cause hearing so long as that information could be relevant to the merits of an application for a prejudgment remedy. Such an order would not violate Schiavone's constitutionally protected right to privacy, and he would have the means to petition the court to restrict access to his personal financial information.

In this case, however, the plaintiffs have made no showing that Schiavone's current financial condition or net worth bears any relation to their

--------------------------

[9]Courts have found that Rule 26 also allows for disclosure of a party's financial condition in other situations of less relevance to the current action, most notably when a party's net worth directly effects a calculation of damages and where punitive damages are available. See generally 6 James Wm. Moore, et al, Moore's Federal Practice, §26.41[8] (3d ed. 2007) (citing cases).

application for relief.  The plaintiffs want to know nothing more than if Schiavone possesses any assets to attach should they succeed in obtaining a prejudgment remedy, and if securing a prejudgment remedy would be worth their time and effort.  These self-serving interests have no relevance on the success of the plaintiffs' application for prejudgment relief and are insufficient to require disclosure of Schiavone's personal financial information prior to a probable cause hearing.  See Bahrain, 476 F. Supp. 2d at 188 (inappropriate to order immediate disclosure of assets "merely because [the plaintiff] wishes to know whether it is worth its while to pursue the hearing that it has demanded").

The plaintiffs' motion relies on this court's order to disclose assets prior to a probable cause hearing in Insurity.  In that case, the parties jointly sought a disclosure of assets and the defendant effectively waived its right to a hearing. Insurity, 260 F. Supp. 2d at 288.  As such, Insurity can be read only to mean § 422 confers authority on the court to order disclosure prior to a hearing.  It does not imply, as is the plaintiffs' contention, that an immediate disclosure of assets can be ordered as a matter of right even when a party contests the propriety of that order, which Schiavone does in this case.

The plaintiffs' motion for immediate disclosure of assets must also be DENIED.  This denial is without prejudice to the plaintiffs' right to move for a disclosure of Schiavone's assets in the event they obtain a prejudgment attachment after a probable cause hearing.  See Conn. Gen. Stat. § 52-278n(c).

### C.  Transfer of Assets Into Connecticut

As a final matter, Schiavone moves to dismiss the plaintiffs' application that assets sufficient to satisfy the prejudgment remedy be brought within the state and filed with the clerk of this court for preservation pending the final outcome of the arbitration. An order of this type is injunctive in nature and requires a showing of irreparable harm, which the plaintiffs' have not pled.

The district court possesses the authority to transfer Schiavone's assets into Connecticut to effect a prejudgment remedy. See Sec. Ins. Co. v. Trustmark Ins. Co., 221 F.R.D. 300, 303 (D. Conn. 2003) (Federal Rule of Civil Procedure 64 and prejudgment remedies available under Connecticut law enable the district court to bring assets into the state to satisfy a prejudgment remedy). "It is within this court's power to effectuate a [prejudgment remedy] issued under Connecticut law by ordering the parties over whom the court has in personam jurisdiction to bring such assets into Connecticut for purposes of attachment." Lyons Hollis, 278 F. Supp. 2d at 246 (internal quotation omitted).

The court must process the plaintiffs' application as that for an injunction. See S. New Eng. Tel. Co. v. Global Naps, Inc., 2006 U.S. Dist. Lexis 84654 (D. Conn. Nov. 21, 2006). "The basic requirements to obtain injunctive relief have always been a showing of irreparable injury and the inadequacy of legal remedies." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999). "If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004).

The plaintiffs' application to have Schiavone's assets brought inside Connecticut is conditioned upon the court first granting a prejudgment remedy in their favor following a probable cause hearing.  See Doehr, 501 U.S. at 12 ("even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient ro merit due process protection").  The court DENIES Schiavone's motion to dismiss and reserves judgment as to the need to act in equity until further evidence can be presented at a probable cause hearing.

## IV.  Conclusion

Based on the foregoing, Schiavone's motion to dismiss is DENIED.  The court has subject matter jurisdiction to entertain the claims of both the plaintiffs under § 422.  This ruling does not entitle the plaintiffs to a prejudgment remedy, disclosure of Schiavone's assets or transfer of those assets into Connecticut.  However, as those forms of relief may be necessary to protect the plaintiffs' rights in the pending arbitration, the plaintiffs have stated claims upon which relief can be granted.

The court finds the plaintiffs are entitled to a probable cause hearing regarding their application for a prejudgment remedy.  Should they successfully obtain a prejudgment remedy of attachment, and after presentation of evidence relevant to a showing of irreparable harm, the court will consider the plaintiffs' request that Schiavone's assets be transferred within the state and filed with the court clerk for preservation.

The plaintiffs' motion for an immediate disclosure of assets is DENIED. Schiavone's current financial condition is irrelevant to this action unless a prejudgment remedy is first awarded to the plaintiffs.

A hearing on the application for a prejudgment remedy is scheduled for September 26, 2007, at 10:00 am, at Courtroom two, 450 Main Street, Hartford, CT.

IT IS SO ORDERED.

_____/s/_____

Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: September 13, 2007.